Davis, P. J.
[After stating facts.]—It sufficiently appears from the testimony taken by the referee, and it is plainly manifest from the present condition of the property, that a forced sale of the Broadway property cannot be made at this time, without danger of most serious prejudice to the rights and interests of the defendants. The property is incumbered by a mortgage of $85,000. This, in itself, would be no obstacle to a sale, but it is also subject to a lease which has some three years to run, at a rent too small to invite investment, and it is reported by the referee to be subject also to the payment to the tenant, at the expiration of *16 his lease, of the sum of $29,756.45, for money expended by him in the construction of the building now standing on the property. This last incumbrance is of such peculiar character that it cannot fail to be a cause of serious embarrassment in making a sale. It will be-hereafter shown in the consideration of another exception, that the referee has mistaken its nature and extent. Under the present depression in the values of real estate, as testified to before the referee (which, so-far as it is general, is a condition of things of which the court may take notice), it seems manifest that a sale of the property cannot be made without great, detriment to the defendants.
The trustee under the will of James B. Walter, the-younger, in whom an undivided half is vested subject to the specified trusts, has no authority in her capacity as trustee to become a competitor at such sale. The-funds in her hands, if there be any, other than the lands, cannot be used by her for that purpose ; and the several infant defendants whose property is held in trust, are not in condition to become purchasers. The plaintiff alone, of all the parties to the action, is in position to become a buyer, and considering the condition of the property and the nature of the incumbrances and the lease, and the present depression of values, it requires no stretch of fancy to foresee, that a forced judicial sale is more than likely to throw the property into his hands at an inadequate price.
Where infants are interested in property sought to be partitioned, it is the duty of a court of equity to be sedulous to protect their rights and prevent a sacrifice of their interests, so far as consistent with the legal and equitable rights of others, and in determining whether a sale, or an actual partition shall be made, the court should closely scrutinize the probable effect of either course, upon the interests of the infants. A *17 very careful examination of the facts of this case as they appear by the report and evidence and the pleadings and allegations of the parties, convinces me that to order a sale of the Broadway property at this time, is virtually to sacrifice it for the benefit of the party who can purchase, to the prejudice of the trustee and her cestui que trusts who cannot.
It is in the light of this conclusion that the exception to the omission of the referee to report whether the whole property is not so situated, that an actual partition of it can be made, should be considered. The order of reference seems to have required such a report; but it is apparent that the question is one very proper to be considered by the court. The substance of the report in relation to the Broadway property is, that it should be sold, because the building cannot be divided, into two stores or buildings without injury to the value of the whole. But if that be so, it is no reason why actual partition of the whole of the property cannot be made, if an allotment of the Broadway property to one can be counterpoised by an allotment of the whole or part of the other lands to others. The Broadway property, subject to the lease and the heavy incumbrances, actual and alleged, may or may not be worth more than the twenty lots which appear to be unincumbered. But suppose, for illustration, that the twenty lots are just equal in value to the equity of redemption in the Broadway property subject to the lease, &c., what is there in that case to prevent an equitable, actual partition, which shall allot the twenty lots to one party, and the Broadway property to the other \ For the purpose of the partition, there are practically but two parties to the action—Thomas Henry Walter, the plaintiff, and Harriet Amelia Walter, the trustee.' It is neither necessary or proper that the partition should extend further than a division between them ; and the portion allotted to the trustee will be *18 taken, charged with the trusts of the will, and the powers of sale thereby given. A further partition between the several cestui que trusts, present and contingent, is neither practicable nor contemplated.
So, if there be inequality of value between the Broadway property and the lots, what is there to hinder the commissioners in partition from making such allotment of the several parcels, as will produce equality, or from producing equality by awarding proper compensations to be made in money %
Since this course is clearly practicable, and can be pursued without endangering the just rights of either party, the court would be derelict in duty toward the infant defendants, who are a part of the cestui que trusts, if it overruled the exceptions and ordered a sale of the Broadway property, under all the circumstances of the case. The exceptions, so far as they relate to the direction to sell the Broadway property, and partition the twenty lots only, and so far as they relate to the omission to report whether the property, taken as a whole, cannot be partitioned, should be sustained.
It is not necessary that the court should now pass upon the question whether the Broadway property can or cannot be actually divided. It is fifty-five feet wide on Broadway,, and forty-seven feet in width, on Crosby-street, and is used as a single store. The question, whether it can or should, in order to do equal justice between the parties, be divided into two stores, by a division wall, will be an open one for the consideration of the commissioners in partition; and- it is only alluded to now for the purpose of preventing any inference that the court in the suggestions as to the feasibility of another form of partition, intended to hold that no actual division of the Broadway property should be made.
It is important to notice another exception with *19 more particularity, because a confirmation of the report in that regard, might lead to embarrassments hereafter. The referee reports that the Broadway property “is incumbered by an agreement in relation to said lease, made between the then acting executors of James R. Walter, the elder, deceased, and Jonathan O. Fowler, the then owner of said lease, dated the fourteenth day of October, 1864, under which agreement the said Jonathan O. Fowler is to receive the sum of §29,756.45, at the expiration of said lease and he further reports, that the property should be sold subject to this incumbrance. Exception is taken to the conclusion that the sum above stated is an incumbrance on the property, and also to the report, that the amount stated is the sum which the executors of James R, Walter agreed to pay.
It is not necessary to decide whether or not the sum which will become due under the agreement annexed to the report, is an incumbrance in any strict sense of the term ; or whether the agreement is a covenant charging, and “running with the land.” The-amount, whatever it may be found to be, ought to be treated as an equitable charge upon the property, and its payment provided for in any partition or sale in this action. But as to the question of its amount the referee is, I think, clearly mistaken. The lease contained provisions for a rebuilding in case of destruction by fire, and for the application of the insurance moneys to that purpose. The building was destroyed by fire. The insurance thereon was §40,000. The materials left undestroyed were valued at $18,000. The substance of the agreement afterwards made between. the tenant and the executors was, that the tenant should take those amounts of money and materials and proceed to erect a building which should cost at least $6,000 over and above the materials so taken; that the excess of cost beyond the $58,000 so received, *20 should be ascertained in a manner prescribed by the, agreement, and the amount so ascertained should be-the basis of compensation to the tenant for the money expended by him in the construction of the building, and be payable as provided in the agreement after the expiration of the term. It was further agreed, that the-whole value of the building at the "time of its completion, should be deemed and taken, for the purposes of' the agreement, to be the $18,000, value of materials, the .$40,000, amount of insurance, and the amount which the tenant should have expended beyond those-, sums as ascertained under the agreement; and the executors agreed, that they would pay after the expiration of the term to the tenant “ such a proportion of his extra expenditure as the value of the building at that time shall bear to the cost of it; ”and the agreement proceeded to state, for greater certainty, an arithmetical example to illustrate the mode in which the. amount to be paid should be ascertained. It provided also for arbitrators, and an umpire, to determine the-value of the building in case the parties themselves, should not agree.
After the building was completed by the tenant, an instrument was made and signed between him and the-executors, which ascertained and fixed the amount which had been expended by the tenant at $29,756.45. This instrument operated to ascertain the cost of the-building, and established the basis upon which the compensation to the tenant is hereafter to be made ; but what amount he will be entitled to receive after the expiration of the term, depends altogether upon the ascertainment of the value of the building at that time. If that value shall have shrunk below the cost, the compensation will have shrunk accordingly, under the provision for its ascertainment given in the agreement, and the agreement will govern both the parties- and the arbitrators, if any be chosen, in determining *21 the amount to be paid. The referee has fallen into the ■error of supposing that the instrument which ascertains the amount of extra expenditure by the tenant also fixes that sum as the amount to be paid, and hence he concludes, that the sum ascertained is to be regarded as an established incumbrance with which the property may now be charged. It is to be observed also, that it is provided by the agreement that if at the expiration of the term of the lease, the heirs of the elder Walter shall have come into the possession of the premises, the amount to be ascertained shall be payable at their election in five or ten yearly installments. The will of the elder Walter having been adjudged invalid and set aside, and the executors thereby appointed displaced, the heirs have come into possession, and it is upon their right and title thus obtained, that they are prosecuting and defending this action. Their right of election as to the time of payment is, therefore, in force under the agreement; and the defendants cannot be deprived of the benefit of it by a decree in this action without their consent. The exception to this part of the report must be sustained.
The report of the referee must be modified in accordance with the views above expressed, and, as so modified, confirmed. Upon such modification the judgment will be entered, providing for actual partition of the whole of the premises, and appointing three commissioners in partition for the purpose of making the partition, with the usual powers and authority, and with the usual directions in respect to the hearing and proceedings before such commissioners, and the awarding of compensation between the parties for the purpose of equality of partition.
A decretal order will be prepared and submitted for settlement before me, on five days’ notice to all parties who have appeared .in the action, in which .the following named persons will be named as commissioners *22 in partition, to wit: Julien P. Davis, counselor-at-law, Saulsbury L. Bradley, builder, and William V. Smith, surveyor, all residents and freeholders of the-city and county of New York.
All questions of costs and allowances will be-reserved till the coming in of the report of such commissioners, and motion for the final confirmation thereof.